Ben SIMON, Plaintiff,

v.

## MANUFACTURERS HANOVER TRUST CO. and Chemical Banking Corporation, Defendants.

### No. 93 Civ. 2682 (CSH).

United States District Court,
S.D. New York.

March 28, 1994.

Mark J. Stratton, Law Offices of Mark J. Stratton, New York City, for Ben Simon.

John W. Ohlweiler, Simpson Thacher & Bartlett, New York City, for Manufacturers Hanover Trust Co., Chemical Banking Corp.

## MEMORANDUM OPINION AND ORDER

HAIGHT, District Judge:

Plaintiff brought this action alleging discrimination on the basis of age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), as amended, 29 U.S.C. § 621 *et seq.*, 29 U.S.C. § 215 *et seq.* and New York Executive Law § 296 (McKinney's 1993). The case is currently before the Court on plaintiff's motion under Fed. R.Civ.P. 12(f) to strike certain of the affirmative defenses set forth in defendants' answer. For the following reasons, the Second, Seventh, Eighth and Ninth Affirmative Defenses are stricken; but I deny plaintiff's request to strike the First Affirmative Defense.

### *BACKGROUND*

According to the complaint, defendant Manufacturers Hanover Trust Co. ("Manufacturers Hanover") hired plaintiff as a computer systems specialist in 1983. Plaintiff allegedly continued in a mutually beneficial employment relationship with the bank for the next nine years, receiving several promotions and salary increases. On October 26, 1992, soon after Manufacturers Hanover merged with defendant Chemical Banking Corporation ("Chemical"), plaintiff was terminated from his employment with the bank, at the age of 55. Just two days after his discharge, on October 28, 1992, plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging age discrimination resulting in his termination. On April 23, 1993, plaintiff filed the present complaint seeking reinstatement to his position as well as liquidated, compensatory and punitive damages.

Defendants served plaintiff with an answer to the complaint on June 17, 1993.[1] The answer interposes nine affirmative defenses, five of which plaintiff challenges as insufficient on the present motion.

## DISCUSSION

■ Rule 12(f) permits the Court to "order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A motion to strike should not be allowed if the defense presents questions of fact, and "even when the defense presents a purely legal question, the courts are very reluctant to determine disputed or substantial issues of law on a motion to strike; these questions quite properly are viewed as determinable only after discovery and a hearing on the merits." *William Z. Salcer, Etc. v. Envicon Equities,* 744 F.2d 935, 939 (2d Cir.1984) (quoting 5 C. Wright & A. Miller, *Federal Practice & Procedure* § 1381, at 800–01), *vacated on other grounds,* 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986). Although motions to strike are generally disfavored, they will be granted where "it appears to a certainty that plaintiff[ ] would succeed despite any state of the facts which could be proved in support of the defense." *Id.* (quoting *Durham Industries, Inc. v. North River Insurance Co.,* 482 F.Supp. 910, 913 (S.D.N.Y.1979) (quoting *Lehmann Trading Corp. v. J. & H. Stolow, Inc.,* 184 F.Supp. 21, 22–23 (S.D.N.Y.1960))). Indeed, motions to strike "serve a useful purpose by eliminating insufficient defenses and saving the time and expense which would otherwise be spent in litigating issues that would not affect the outcome of the case." *United States v. Union Gas Co.,* 743 F.Supp. 1144, 1150 (E.D.Pa. 1990). Therefore, "[w]here the defense is insufficient as a matter of law, the defense should be stricken to eliminate the delay and unnecessary expense from litigating the invalid claim." *FDIC v. Eckert Seamans Cherin & Mellott,* 754 F.Supp. 22, 23 (E.D.N.Y. 1990).

*Failure to State a Claim*

■ Plaintiff argues that the First Affirmative Defense, "The complaint fails to state a claim upon which relief can be granted," is patently insufficient because the complaint clearly states a *prima facie* claim of age discrimination under both the ADEA and N.Y.Exec.Law § 296, which is governed by the same standards as his ADEA claim. *See Tyler v. Bethlehem Steel Corp.,* 958 F.2d 1176, 1180 (2d Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The parties do not quarrel over the required elements for a claim of age discrimination. Defendants assert that because the law requires plaintiff to show that age was the "but for" factor in the decision to terminate, and because "contrary to the allegations in the Complaint" plaintiff will not be able to make that showing, a question remains whether plaintiff can state a claim warranting relief.

As plaintiff vigorously contends, this argument would not support a motion to dismiss for failure to state a claim under Rule 12(b)(6) because it points to a factual dispute not a legal insufficiency. Nevertheless, defendants' First Affirmative Defense is just that—an affirmative defense—not a motion to dismiss. Thus, the analysis required here is not the same as the analysis the Court would apply on a motion to dismiss for failure to state a claim. *See Securities and Exchange Commission v. Toomey,* No. 92 Civ. 1492, 1992 WL 203851 *3, 1992 U.S.Dist. LEXIS 11826 *9 (S.D.N.Y.1992) (declining to strike identical affirmative defense, court reasoned that "[t]he question of whether plaintiff has stated a claim upon which relief can be granted appears only as a defensive pleading and does not demand immediate resolution. The burdens on the pleader are therefore not the same as they would be had he made a Rule 12(b)(6) motion.") A failure-to-state-a-claim defense is akin to a "general denial" and is widely accepted as a permissible affirmative defense. *See id.* As another court has held in the same context, although the defense may be "redundant, there is not prejudicial harm to plaintiff and the defense need not be stricken." *Oppel v. Empire*

---

1. The answer, while apparently properly served, was never filed with the Court. Defendants are directed to file the answer within ten (10) days of the date of this Opinion.

*Mut. Ins. Co.,* 92 F.R.D. 494, 498 (S.D.N.Y. 1981) (Weinfeld, J.). Therefore, because the First Affirmative Defense is essentially a general denial and does not ask the Court to determine whether the complaint is sufficient, plaintiff will not be prejudiced by its retention and I decline to strike it.

### Statute of Limitations

■ The Second Affirmative Defense alleges "The Complaint is barred by the applicable statute of limitations." Plaintiff contends that this defense is insufficient because the complaint was unquestionably timely filed in compliance with the statute of limitations provision of the ADEA, § 626(d), and under New York law. Defendant does not challenge plaintiffs' contention that the complaint's claim for relief arising out of his allegedly discriminatory termination was timely filed. Defendants instead assert that it is "too early" to determine whether plaintiff will add further claims alleging that the bank discriminated against him at earlier times, which claims could potentially be time-barred. Defendants' Memorandum in Opposition at 6–7.

Defendants argument does not support the sufficiency of this statute of limitations defense against the present complaint. To the contrary, defendants' argument implicitly recognizes that the complaint does not presently assert claims which are barred by the statute of limitations. Defendants instead assert that the defense expresses concern about the untimeliness of future claims, not present in the complaint. The defense is therefore clearly insufficient to defeat the present complaint and may not be asserted. If plaintiff seeks to amend the complaint to add further claims of discrimination, defendant might resurrect the affirmative defense against any permitted additional claims.

Defendants argue that in any event the defense should not be stricken because its inclusion does not prejudice plaintiff. I reject this contention. As plaintiff recognizes, inclusion of this defense could expand the scope of discovery which would impose on plaintiff unnecessary expense and effort in order to litigate a defense which is wholly insufficient. Accordingly, as the Second Af-

firmative Defense is insufficient and prejudicial, I grant plaintiff's request to strike it.

### Terminable-at-Will Employment

■ The Seventh Affirmative Defense asserts that "Plaintiff's employment was terminable at will by either party." Plaintiff contends that his status as an at-will employee is completely irrelevant to his claim of age discrimination. While defendants concede that the age discrimination statutes prevent employers from firing even at-will employees with a discriminatory motive, *see Rickel v. Commission of Internal Revenue,* 900 F.2d 655, 662–63 (3d Cir.1990) (duty of employer not to discriminate on the basis of age under ADEA "arises even in the absence of a written employment contract and despite ... conflicting common law employment-at-will principles"); *cf. Pater v. Health Care and Retirement Corp.,* 808 F.Supp. 573, 575 (S.D.Ohio 1992) (court declined to exercise pendant jurisdiction over wrongful discharge claim; common law wrongful discharge claim involved issues, such as whether employment contract existed or whether employment was at-will, which were not present in ADEA claim), defendants nevertheless assert without elaboration that plaintiff's at-will status "goes to the heart of [his] allegations." Defendants' Memorandum in Opposition at p. 8. This effort to support the defense fails.

Plaintiff sets forth a claim of age discrimination, not a breach of contract or wrongful discharge action. The critical issue in this case is whether defendants had a discriminatory motive for plaintiff's dismissal, not whether defendants were unfettered in their ability to dismiss him. Regardless of whether plaintiff was an at-will employee whose employment was terminable at any time, defendants recognize that the bank could not have fired him for a discriminatory reason. It is therefore difficult to fathom how his status as an at-will employee is in any way relevant to plaintiff's discrimination claim, an assertion which defendants have completely failed to explain. Because I conclude that his position as an at-will employee could not conceivably defeat plaintiff's discrimination claim, the Seventh Affirmative Defense is insufficient and will be stricken.

*Failure to Exhaust Administrative Remedies Under Benefit Plans*

■ Plaintiff argues that the Eighth Affirmative Defense, which alleges that "[u]pon information and belief, plaintiff failed to exhaust administrative remedies under the Bank's health and welfare benefit plans," should be stricken as insufficient and redundant. Plaintiff argues that the defense is inadequate to defeat his claim because neither the ADEA nor N.Y.Exec.Law § 296 require such exhaustion of remedies. Moreover, the defense is redundant, according to plaintiff, because defendants have asserted an affirmative defense of failure to mitigate damages. Plaintiff argues that the challenged defense essentially asserts that "if plaintiff had exhausted such remedies then he would not have been damaged by defendants' alleged age discrimination." Plaintiff's Memorandum at p. 6. Defendants respond substantially as follows:

"The Complaint specifically requests that Plaintiff receive all benefits, *i.e.*, pension, sick leave and other lost benefits, that he would have received but for the Bank's alleged discrimination. However, the Bank has particular procedures for making claims or appealing determinations with regard to its health and welfare plans, which procedures Plaintiff did not follow."

Defendants' Memorandum at pp. 8–9. This response only supports plaintiff's argument that the defense goes to mitigation of damages, rather than liability. Defendants cannot conceivably argue that if plaintiff had followed these procedures, he would not have been fired. Rather, as I understand their argument, defendants contend that if plaintiff had followed the proper administrative procedures, his damages would not be as extensive as he claims. Because it simply presents a more narrowly focused version of the failure-to-mitigate-damages defense, the Eighth Affirmative Defense is redundant of the Fourth Affirmative Defense alleging failure to mitigate damages and will therefore be stricken.

*Failure to Satisfy Statutory Administrative Remedies*

The Ninth Affirmative Defense reads, "Upon information and belief, plaintiff has not satisfied his administrative remedies under the Age Discrimination in Employment Act and/or New York State Executive Law, prior to the commencement of this action." Plaintiff contends that this defense is insufficient because the complaint clearly establishes his compliance with the applicable statutory requirements by filing the present action more than sixty days after filing the claim with the EEOC and less than 300 days after the alleged act of discrimination. In response, defendants point to § 626(e) of the ADEA which provides:

"If a charge filed with the Commission under this Act is dismissed or the proceedings of the commission are otherwise terminated by the Commission, the Commission shall notify the person aggrieved. A civil action may be brought under this section ... within 90 days after the date of the receipt of such notice."

Admittedly, plaintiff did not receive a right-to-sue notice prior to commencing this lawsuit. Nevertheless, plaintiff argues that he is in compliance with the ADEA requirements because this section of the ADEA does not require the provision of such notice as a prerequisite to suit. In contrast, defendants assert that this language in the ADEA might require the issuance of a right-to-sue notice by the EEOC as a prerequisite to filing suit. According to defendants, the language in § 626(e) can be likened to a provision in Title VII which courts have construed as requiring a right-to-sue notice before a lawsuit may be commenced. Because no court had addressed the issue, defendants suggest that it remains open and plaintiff's failure to receive such notice before commencing suit could require dismissal of the action.

■ I conclude that a right-to-sue notice is not a prerequisite to suit under the ADEA and therefore this defense must be stricken as it could not defeat plaintiff's claim. Defendants' contention that the issue of whether plaintiff properly brought suit before a right-to-sue notice issued presents a "substantial issue of law" is unfounded. Defendants admit that the EEOC itself has taken the position that a right-to-sue notice is *not* a prerequisite to suit. *See* Defendants' Memo-

randum at 10. Yet, because no court had addressed the issue, defendants maintain that a right-to-sue notice could conceivably be a prerequisite to suit under the ADEA. However, rather than signifying an unsettled question of law, the dearth of authority just as easily signifies an issue so clear-cut that it need not be addressed, as appears to be the case with the issue raised in this defense.

The amendments to the ADEA incorporating the provision at issue have been in effect since November 21, 1991. Yet, I have found only one published opinion since that date which presented a challenge similar to the one defendants raise in this affirmative defense. See Adams v. Burlington Northern R. Co., 838 F.Supp. 1461 (D.Kan.1993). In a particularly thorough analysis, Judge Van Bebber, noting that the issue had not been previously addressed by any court, rejected the defendant's contention that § 626(e) requires the issuance of a right-to-sue notice as a condition precedent to filing suit. The court acknowledged certain similarities between the provisions of Title VII and those of the ADEA, but also identified crucial differences between the two statutes:

> "Most importantly, under the plain language of the ADEA, the claimant's independent right to sue arises automatically upon the expiration of sixty days after filing of the charge with the EEOC. 29 U.S.C. § 626(d). No similar right exists under Title VII. The wording of the Title VII provision makes it clear that an individual's right to bring suit does not arise until after the EEOC has issued a right-to-sue notice."

Id. at 1468. The court further noted that "nothing in the language of the ADEA statute requires that the plaintiff receive a right-to-sue notice before filing suit," and "if Congress had intended that individuals should have no right to sue until after receipt of the right-to-sue notice, it would have deleted from § 626(d) the language that gives an

individual the right to bring suit sixty days after charges are filed with the EEOC." Id.

Finally, the court determined that an analysis of the legislative history supported its conclusion that a right-to-sue notice is not a prerequisite to suit. The provision's analysis, as identified by the court, is in pertinent part as follows:

> "[This section] provides that the EEOC shall notify individuals who have filed charges of the dismissal or completion of the Commission's proceedings with respect to those charges, and allows those individuals to file suit from 60 days after filing the charge until the expiration of 90 days after completion of those proceedings. This avoids the problems created by current law, which imposes a statute of limitations on the filing of suit regardless of whether the EEOC has completed its action on an individual's charge. 137 Cong. Rec. S15,477 (1991)."

Id. at 1469 (alteration in original).

I find Judge Van Bebber's cogent analysis persuasive and I follow his reasoning. I conclude as he did, that § 626(e) does not impose the issuance of a right-to-sue notice by the EEOC as a prerequisite to suit; instead it provides the end of the window of opportunity for commencing suit for the individuals who prefer to wait for the EEOC determination on the claim. Thus, plaintiff's receipt of a right-to-sue letter, or lack thereof, has no bearing on his exhaustion of administrative remedies before bringing this lawsuit.[2] The Ninth Affirmative Defense is therefore insufficient and will be stricken.

*Rule 11 Sanctions*

While certain of defendants' affirmative defenses have been stricken, I deny plaintiff's motion for Rule 11 sanctions based on their inclusion in the pleading.

---

2. Defendants argue that because the defense presents a substantial disputed question of law, the defense should not be stricken. Even if defendants characterization of this issue is correct, however, courts need only be "reluctant" to resolve such issues on a motion to strike, they are not precluded from determining them. See Sal-

cer, 744 F.2d at 939. A resolution of this issue is particularly necessary now, rather than at a later stage, because the result determines whether plaintiff's present suit is entirely precluded and, if so, the timing of the decision effects whether plaintiff is still within the limitations period to commence a new suit.

*CONCLUSION*

I grant plaintiff's motion to strike the Second, Seventh, Eight and Ninth Affirmative Defenses. Plaintiff's motion to strike the First Affirmative Defense is denied. His motion for Rule 11 sanctions is denied.

It is SO ORDERED.